FILED

2017 OCT 13  PM 12: 36

U.S. MAGISTRATE JUDGE

BY_____



# SEALED

Office of the United States Attorney
District of Nevada
501 Las Vegas Boulevard, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

FILED

STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
CRISTINA D. SILVA
PATRICK BURNS
Assistant United States Attorneys
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Fax (702) 388-6698
john.p.burns@usdoj.gov

2017 OCT 13  PM 12: 36

U.S. MAGISTRATE JUDGE

BY:_____

Attorney for the United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH EMAIL ACCOUNT CENTRALPARK1@LIVE.COM THAT IS STORED AT A PREMISES CONTROLLED BY MICROSOFT.   **A1** | Magistrate No. <br><br> **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS** <br><br> **(Under Seal)** |
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH EMAIL ACCOUNT MARILOUROSES@LIVE.COM THAT IS STORED AT A PREMISES CONTROLLED BY MICROSOFT.   **A2** | Magistrate No.   2:17-mj-01010-NJK <br><br> **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS** <br><br> **(Under Seal)** |

STATE OF NEVADA       )
                      ) ss:
COUNTY OF CLARK       )

/ / /

/ / /

1

1

2

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION FOR SEARCH WARRANTS

3     I, Zachary C. Mckinney, Special Agent, Federal Bureau of Investigation (FBI),

4   having been duly sworn, hereby depose and say:

5              ### INTRODUCTION AND AGENT BACKGROUND

6        1.     Your Affiant makes this affidavit in support of an application for search

7   warrants for information associated with email accounts centralpark1@live.com ("Target

8   Account 1") and marilouroses@live.com ("Target Account 2"). Target Account 1 is an

9   account associated with STEPHEN PADDOCK. Target Account 2 is an account

10  associated with MARILOU DANLEY. The information associated with both accounts is

11  stored at a premises owned, maintained, controlled, or operated by Microsoft

12  Corporation ("Microsoft"), an American multinational technology company based in

13  Redmond, Washington that specializes in Internet-related services and products along

14  with the development and manufacturing of computer-related items. Those online

15  services include, but are not limited to, email services, cloud computing, and many other

16  services. The information to be searched is described in the following paragraphs and in

17  Attachment "A" (attached hereto and incorporated herein by reference). This affidavit is

18  made in support of an application for search warrants under 18 U.S.C. §§ 2703(a),

19  2703(b)(1)(A), and 2703(c)(1)(A) to require Microsoft to disclose to the government

20  records and other information in its possession, pertaining to the subscriber or customer

21  associated with the Target Accounts.

22       2.     I am a Special Agent with the Federal Bureau of Investigation, currently

23  assigned to Las Vegas, Nevada. I have been employed as a Special Agent of the FBI since

24

1    March of 2017. Over the course of my employment with the FBI, I have conducted

2    surveillance, analyzed telephone records, interviewed witnesses, supervised activities of

3    sources, executed search warrants, and executed arrest warrants. These investigative

4    activities have been conducted in conjunction with a variety of investigations, to include

5    those involving robbery, drug trafficking, human trafficking, criminal enterprises, and

6    more. In addition to my practical experiences, I received five months of extensive law

7    enforcement training at the FBI Academy. Previous to the FBI, I was employed as a

8    human intelligence gatherer with the United States Army. I was trained extensively in

9    interrogation, interview, and source handling techniques and best practices. I also

10   received an MBA in International Business and worked with ExxonMobil as a financial

11   manager.

12        3.    I make this affidavit in support of an application for a search warrant for

13   information   associated   with   the   Microsoft   accounts   associated   with

14   centralpark1@live.com" and "marilouroses@live.com," which is stored at a premises

15   owned, maintained, controlled, or operated by Microsoft Corporation, headquartered at

16   One Microsoft Way, Redmond, WA  98052-6399, hereinafter referred to as "premises,"

17   and further described in Attachments A-1 and A-2 hereto.

18        a.    Destruction/Damage of Aircraft or Aircraft Facilities - 18 U.S.C.A. § 32(a);

19        b.    Violence at International Airport - 18 U.S.C. § 37(a)(2); and

20        c.    Unlawful Interstate Transport/Delivery of Firearms by Non Federal
              Firearms Licensee – 18 U.S.C. §§ 922(a)(3) and (5);

21

22        d.    Aiding and Abetting – 18 U.S.C. § 2.

23

24

3

1   (hereafter, "Subject Offenses") have been committed by STEPHEN PADDOCK,

2   MARILOU DANLEY, and others yet unknown. There is also probable cause to search

3   the information described in Attachment "A" for evidence of these crimes and

4   information which might reveal the identities of others involved in these crimes, as

5   described in Attachment "B" (attached hereto and incorporated herein by reference).

6   **PROBABLE CAUSE**

7         4.      On the evening of Sunday, October 1, 2017, Route 91 Harvest, a music

8   festival, was in progress at 3901 South Las Vegas Boulevard, Las Vegas, Nevada. At

9   approximately 10:08 p.m., the Las Vegas Metropolitan Police Department (LVMPD)

10   received calls reporting shots had been fired at the concert and multiple victims were

11   struck. LVMPD determined the shots were coming from Rooms 134 and 135 on the 32nd

12   floor of the Mandalay Bay Resort and Casino, located due west of the festival rounds at

13   3950 South Las Vegas Boulevard, Las Vegas, Nevada. These rooms are an elevated

14   position which overlooks the concert venue. Witness statements and video

15   footage captured during the attack indicates that the weapons being used were firing in

16   a fully-automatic fashion.

17         5.      LVMPD officers ultimately made entry into the room and located an

18   individual later identified as Stephen Paddock. Paddock was deceased from an apparent

19   self-inflicted gunshot wound.

20         6.      Paddock's Nevada driver's license was located in the Mandalay Bay hotel

21   room with Paddock, and both hotel rooms were registered in his name. A player's club

22   card in name of Marilou Danley was located in Paddock's room, and the card returned

23   to the address located on Babbling Brook Street in Mesquite, Nevada. FBI Agents

24

4

located Danley, who was traveling outside the United States at the time of the shooting. It was ultimately determined that Danley resided with Paddock at the Babbling Brook address.

7.     On October 2, 2017, search warrants were executed on Paddock's Mandalay Bay hotel rooms, Paddock's vehicle at Mandalay Bay, and two Nevada residences owed by Paddock: 1372 Babbling Brook Court in Mesquite, and 1735 Del Webb Parkway in Reno, Nevada. Officers and Agents found over 20 firearms, hundreds of rounds of ammunition, and hundreds of spent shell casings in the Mandalay Bay hotel rooms, in close proximity to Paddock's body. Over a thousand rounds of rifle ammunition and 100 pounds of explosive material was found in Paddock's vehicle. Additional explosive material, approximately 18 firearms, and over 1,000 rounds of ammunition was located at the Mesquite residence. A large quantity of ammunition and multiple firearms were recovered from the Reno residence.

8.     As of this date, 58 people have been identified to have been killed in Paddock's attack and another 557 were reportedly injured. Additionally, investigators discovered that STEPHEN PADDOCK also utilized a firearm to shoot large fuel tanks on Las Vegas McCarran International Airport property. Multiple bullet holes were found on the tank, which investigators believe was an attempt by STEPHEN PADDOCK to cause the tanks to explode.

9.     In an effort to determine whether or not STEPHEN PADDOCK was assisted and/or conspired with unknown individuals, investigators have attempted to identify all of STEPHEN PADDOCK's associated. It was quickly determined that a casino player's card in the name of MARILOU DANLEY was located in the room at the

time of the attack. She has been identified thus far as the most likely person who aided or abetted STEPHEN PADDOCK based on her informing law enforcement that her fingerprints would likely be found on the ammunition used during the attack. Subsequently, investigators worked to identify the communication facilities utilized by STEPHEN PADDOCK and MARILOU DANLEY.

10.     Based on a review of STEPHEN PADDOCK's financial accounts, Target Account 1 was determined to belong to STEPHEN PADDOCK. On October 3, 2017, investigators requested an emergency disclosure of records from Microsoft related to Target Account 1 so it could be immediately searched for any evidence of additional co-conspirators. Unfortunately, the information was only requested for a six-month timeframe. Within the account, investigators identified Target Account 2 as one that belonged to MARILOU DANLEY, which was clear based on the communications between the two email accounts. In an interview, DANLEY stated that PADDOCK had access to one of her email accounts, which investigators believe to be Target Account 2.

11.     On September 25, 2017, an email was exchanged between the Target Accounts which discussed a wire transfer of funds which was to be sent by STEPHEN PADDOCK to MARILOU DANLEY. It is unclear what the purpose of the wire transfer was, but MARILOU DANLEY is known to have been in the Philippines at the time.

12.     Additionally, on July 6, 2017, Target Account 1 sent an email to centralpark4804@gmail.com which read, "try an ar before u buy. we have huge selection. located in the las vegas area." Later that day, an email was received back from centralpark4804@gmail.com to Target Account 1 that read, "we have a wide variety of optics and ammunition to try." And lastly, Target Account 1 later sent an email to

centralpark4804@gmail.com that read, "for a thrill try out bumpfire ar's with a 100 round magazine." Investigators believe these communications may have been related to the eventual attack that occurred at the Mandalay Bay in Las Vegas.

13.   Your Affiant believes the requested search warrants will yield significant information from Microsoft such as STEPHEN PADDOCK's and MARILOU DANLEY's contact lists, email messages content, IP address usage, photographs, third-party applications associated with the account, and more, which may constitute evidence of the planning of the attack and potentially identify other participants in the attack. Ultimately, your Affiant strongly believes the requested information will lead investigators to determine the full scope of STEPHEN PADDOCK's plan and MARILOU DANLEY's possible involvement.

14.   Investigators have previously sought and obtained a search warrant to examine the contents of both Target Accounts 1 and 2. After execution of that warrant, however, it became apparent and was confirmed with Microsoft that Microsoft was refusing to provide data related to/contained in the OneDrive online storage files for either account. Microsoft indicated to investigators that it did not believe such information was encompassed by the items to be produced that were specified in the original warrant. Investigators believe therefore that there is additional evidence Microsoft currently possesses that relates to the OneDrive online storage service, as well as potentially in a suite of other online services that Microsoft offers, including Office 365, Windows Live Mail, Windows Live Writer, Windows Photo Gallery, Windows Live Messenger, Microsoft Family Safety, and Microsoft Outlook Hotmail Connector. Thus,

your Affiant seeks more specific authorization to seize and search the OneDrive and other service data specified in Attachment B of the instant warrant application.

## RELEVANT TECHNICAL TERMS

15.     The following non-exhaustive list of definitions applies to this Affidavit and the Attachments to this Affidavit:

a.     The "Internet" is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web is a functionality of the Internet which allows users of the Internet to share information.

b.     "Internet Service Providers" are companies that provide access to the Internet.  ISPs can also provide other services for their customers including website hosting, email service, remote storage, and co-location of computers and other communications equipment.  ISPs offer different ways to access the Internet including telephone-based (dial-up), broadband-based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite-based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data (bandwidth). Many ISPs assign each subscriber an account name, such as a user name, an email address, and an email mailbox, and the subscriber typically creates a password for his/her account.

c.     "ISP Records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often in the form of log files), emails, information concerning

1    content uploaded and/or stored on the ISP's servers, and other information, which may

2    be stored both in computer data format and in written or printed record format. ISPs

3    reserve and/or maintain computer disk storage space on their computer system for their

4    subscribers' use. This service by ISPs allows for both temporary and long-term storage

5    of electronic communications and many other types of electronic data and files.

6         d.    "Online service providers" (also referred to here as "service

7    providers") are companies that provide online services such as email, chat or instant

8    messaging, word processing applications, spreadsheet applications, presentation

9    applications similar to PowerPoint, online calendar, photo storage and remote storage

10   services. Sometimes they also can provide web hosting, remote storage, and co-location

11   of computers and other communications equipment. Typically, each service provider

12   assigns each subscriber an account name, such as a user name or screen name and the

13   subscriber typically creates a password for his/her account.

14        e.    "Computer," as used herein, is defined as "an electronic, magnetic,

15   optical, electrochemical, or other high speed data processing device performing logical or

16   storage functions, and includes any data storage facility or communications facility

17   directly related to or operating in conjunction with such device."

18        f.    A "server" is a centralized computer that provides services for other

19   computers connected to it via a network. The other computers attached to a server are

20   sometimes called "clients." For example, in a large company, it is common for individual

21   employees to have client computers at their desktops.  When the employees access their

22   email, or access files stored on the network itself, those files are pulled electronically

23   from the server, where they are stored, and are sent to the client's computer via the

24

9

1    network. Notably, servers can be physically stored in any location: it is not uncommon

2    for a network's server to be located hundreds (and even thousands) of miles away from

3    the client computers.

4              g.       "Internet Protocol address," or "IP address," refers to a unique

5    number used by a computer to access the Internet.  IP addresses can be dynamic,

6    meaning that the Internet Service Provider (ISP) assigns a different unique number to

7    a computer every time it accesses the Internet.  IP addresses might also be static, that

8    is, an ISP assigns a user's computer a particular IP address which is used each time the

9    computer accesses the Internet.

10             h.       The term "domain" refers to a word used as a name for computers,

11   networks, services, etc. A domain name typically represents a website, a server computer

12   that hosts that website, or even some computer (or other digital device) connected to the

13   internet.  Essentially, when a website (or a server computer that hosts that website) is

14   connected to the internet, it is assigned an IP address.  Because IP addresses are difficult

15   for people to remember, domain names are instead used because they are easier to

16   remember than IP addresses. Domain-names are formed by the rules and procedures of

17   the Domain Name System (DNS). A common top level domain under these rules is ".com"

18   for commercial organizations, ".gov" for the United States government, and ".org" for

19   organizations.  For example, www.usdoj.gov is the domain name that identifies a server

20   used by the U.S. Department of Justice, and which uses IP address of 149.101.46.71.

21             i.       "Web hosting services" maintain server computers connected to the

22   Internet.  Their customers use those computers to operate websites on the Internet.

23   Customers of web hosting companies place files, software code, databases, and other data

24

10

on servers. To do this, customers typically connect from their own computers to the server computers across the Internet.

          j.      The term "WhoIs" lookup refers to a search of a publicly available online database that lists information provided when a domain is registered or when an IP address is assigned.

          k.      The terms "communications," "records," "documents," "programs," or "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, pictures or videos), or electrical, electronic or magnetic form, as well as digital data files. These terms also include any applications (i.e. software programs). These terms expressly include, among other things, emails, instant messages, chat logs, correspondence attached as to emails (or drafts), calendar entries, buddy lists.

          l.      "Chat" is usually a real time electronic communication between two or more individuals. Unlike email, which is frequently sent, then read and responded to minutes, hours, or even days later, chats frequently involve an immediate conversation between individuals, similar to a face-to-face conversation. Nearly all chat programs are capable of saving the chat transcript, to enable users to preserve a record of the conversation. By default, some chat programs have this capability enabled, while others do not. Many popular web-based email providers, like Microsoft and Microsoft, provide chat functionality as part of the online services they provide to account holders.

/ / /

/ / /

1

**FACTS ABOUT EMAIL PROVIDERS**

2        16.    In my training, my experience and this investigation, I have learned that

3    Microsoft (the Service Provider) is a company that provides free web-based Internet

4    email access to the general public, and that stored electronic communications, including

5    opened and unopened email for Microsoft subscribers may be located on the computers

6    of Microsoft. I have also learned that Microsoft Inc. provides various on-line service

7    messaging services to the general public. Instant Messaging ("IM") is a form of real-time

8    direct text-based communication between two or more people using shared clients. The

9    text is conveyed via devices connected over a network such as the Internet.  In addition

10   to text, Microsoft's software allows users with the most current updated versions to

11   utilize its webcam service. This option enables users from distances all over the world to

12   view others who have installed a webcam on their end. Thus, the Service Provider's

13   servers will contain a wide variety of the subscriber's files, including emails, address

14   books, contact or buddy lists, calendar data, pictures, chat logs, and other files.

15       17.    To use these services, subscribers register for online accounts like the

16   Target Accounts. During the registration process, service providers such as the ones here

17   ask subscribers to provide basic personal information. This information can include the

18   subscriber's full name, physical address, telephone numbers and other identifiers,

19   alternative email addresses, and, for paying subscribers, means and source of payment

20   (including any credit card or bank account number). Based on my training and my

21   experience, I know that subscribers may insert false information to conceal their

22   identity; even if this proves to be the case, however, I know that this information often

23   provide clues to their identity, location or illicit activities.

24

18.     In general, when a subscriber receives an email, it is typically stored in the subscriber's "mail box" on that service provider's servers until the subscriber deletes the Email. If the subscriber does not delete the message, the message (and any attachments) can remain on that service provider's servers indefinitely.

19.     Similarly, when the subscriber sends an email, it is initiated at the subscriber's computer, transferred via the Internet to the service provider's servers, and then transmitted to its end destination. That service provider often saves a copy of the email sent. Unless the sender of the email specifically deletes the Email from the provider's server, the email can remain on the system indefinitely.

20.     A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email.  If an email user writes a draft message but does not send it, that message may also be saved by that service provider, but may not include all of these categories of data.

21.     Just as a computer on a desk can be used to store a wide variety of files, so can online accounts, such as the accounts subject to this application. First, subscribers can store many types of files as attachments to emails in online accounts. Second, because service providers provide the services listed above (e.g. word processing, spreadsheets, pictures), subscribers who use these services usually store documents on servers maintained and/or owned by service providers. Thus, these online accounts often contain documents such as pictures, audio or video recordings, logs, spreadsheets, applications and other files.

22.    Reviewing files stored in online accounts raises many of the same difficulties as with reviewing files stored on a local computer. For example, based on my training, my experience and this investigation, I know that subscribers of these online services can conceal their activities by altering files before they upload them to the online service. Subscribers can change file names to more innocuous sounding names (e.g. renaming "FraudRecords.doc" to "ChristmasList.doc"), they can change file extensions to make one kind of file appear like a different type of file (e.g. changing the spreadsheet "StolenCreditProfiles.xls" to "FamilyPhoto.jpg" to appear to be a picture file, where the file extension ".xls" denotes an Excel spreadsheet file and ".jpg" a JPEG format image file), or they can change the times and dates a file was last accessed or modified by changing a computer's system time/date and then uploading that file to the Online Accounts. Thus, to detect any files that the subscriber may have concealed, agents will need to review all of the files in the Target Accounts; they will, however, only seize the items that the Court authorizes to be seized. Similarly, subscribers can conceal their activities by encrypting files. Thus, these files may need to be decrypted to detect whether it constitutes an Item to be Seized.

23.    I also believe that people engaged in crimes such as the one described herein often use online accounts because they give people engaged in these crimes a way to easily communicate with other co-conspirators. Moreover, online accounts are easily concealed from law enforcement. Unlike physical documents, electronic documents can be stored in a physical place far away, where they are less likely to be discovered.

24.    Service providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the

date on which the account was created, the length of service, records of log-in (i.e.,
session) times and durations, the types of service utilized, the status of the account
(including whether the account is inactive or closed), the methods used to connect to the
account (such as logging into the account via websites controlled by the Service
Provider), and other log files that reflect usage of the account. In addition, service
providers often have records of the Internet Protocol address ("IP address") used to
register the account and the IP addresses associated with particular logins to the
account. Because every device that connects to the Internet must use an IP address, IP
address information can help to identify which computers or other devices were used to
access the online account.

25.    In some cases, subscribers will communicate directly with a service
provider about issues relating to the account, such as technical problems, billing
inquiries, or complaints from or about other users. Service providers typically retain
records about such communications, including records of contacts between the user and
the provider's support services, as well records of any actions taken by the provider or
user as a result of the communications.

26.    In my training and experience, evidence of who was using an online account
may be found in address books, contact or buddy lists, emails in the account, and pictures
and files, whether stored as attachments or in the suite of the service provider's online
applications.   Therefore, the computers of the Service Providers are likely to contain
stored electronic communications (including retrieved and un-retrieved email for their
subscribers) and information concerning subscribers and their use of the provider's

1    services, such as account access information, email transaction information, documents,

2    pictures, and account application information.

3        27.    Microsoft maintains and offers its users the use of OneDrive. OneDrive is

4    a file-hosting service operated by Microsoft as part of its suite of online services. It allows

5    users to store files as well as other personal data like Windows settings or BitLocker

6    recovery keys in the cloud. Files can be synced to a PC and accessed from a web browser

7    or a mobile device, as well as shared publicly or with specific people. OneDrive offers 5

8    gigabytes of storage space free of charge; additional storage can be added either

9    separately or through subscriptions to other Microsoft services including Office 365 and

10   Groove Music.

11       28.    Microsoft offers additional services that may be accessed in relation to and

12   share associated information with a user's email account, including: Office 365, Windows

13   Live Mail, Windows Live Writer, Windows Photo Gallery, Windows Live Messenger,

14   Microsoft Family Safety, and Microsoft Outlook Hotmail Connector.

15   **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

16       29.    Your Affiant anticipates executing these warrants under the Electronic

17   Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

18   2703(c)(1)(A), by using the warrant to require Microsoft to disclose to the government

19   copies of the records and other information (including the content of communications)

20   particularly described in Section I of Attachment "B."  Upon receipt of the information

21   described in Section I of Attachment "B," government-authorized persons will review

22   that information to locate the items described in Section II of Attachment "B."

23

24

## CONCLUSION

30.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

31.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully Submitted,

Zachary C. McKinney, Special Agent
Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
before me this 13th day of October 2017.

_____
UNITED STATES MAGISTRATE JUDGE

17

1

## ATTACHMENT "A-1"

2

### ONLINE ACCOUNT TO BE SEARCHED

3

This warrant applies to information associated with the Microsoft email account
4  centralpark1@live.com   (the "Target Account 1") from inception to present, which is
stored at premises owned, maintained, controlled, or operated by Microsoft Corporation,
5  headquartered at 1 Microsoft Way, Redmond, Washington, 98052.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

ATTACHMENT "A-2"

2

ONLINE ACCOUNT TO BE SEARCHED

3

4

5

This warrant applies to information associated with the Microsoft email account marilouroses@live.com (the "Target Account 2") from inception to present, which is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, headquartered at 1 Microsoft Way, Redmond, Washington, 98052.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## ATTACHMENT "B"
## Particular Things to be Seized

I.   **Information to be disclosed by the Service Provider**

To the extent that the information described in Attachments A1 and A2 is within the possession, custody, or control of Microsoft, including any Emails, records, files, logs, or information that have been deleted but are still available to Service Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Service Provider is required to disclose the following information to the government for each account or identifier listed in Attachments A-1 and A-2 from account inception to present:

a.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any OneDrive accounts associated with or assigned to Target Accounts 1 and 2.

b.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Office 360 accounts associated with or assigned to Target Accounts 1 and 2.

c.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Microsoft Family Safety accounts or services associated with or assigned to Target Accounts 1 and 2.

d.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Live Writer accounts or services associated with or assigned to Target Accounts 1 and 2.

e.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Live Mail accounts or services associated with or assigned to Target Accounts 1 and 2.

f.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Photo Gallery accounts or services associated with or assigned to Target Accounts 1 and 2.

g.   The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Live Messenger accounts or services associated with or assigned to Target Accounts 1 and 2.

## II. **Information to be seized by the United States**

After reviewing all information described in Section I, the United States will seize evidence of violations of Title 18, United States Code Sections 32(a) (Destruction/Damage of Aircraft or Aircraft Facilities); 37(a)(2) (Violence at International Airport); and 922(a)(3); and 5 (Unlawful Interstate Transport/Delivery of Firearms by Non Federal Firearms Licensee); and 2 (Aiding and Abetting) (the "Subject Offenses") that occur in the form of the following, from account inception to present:

a.  Communications, transactions and records that may establish ownership and control (or the degree thereof) of the Target Account, including address books, contact or buddy lists, bills, invoices, receipts, registration records, bills, correspondence, notes, records, memoranda, telephone/address books, photographs, video recordings, audio recordings, lists of names, records of payment for access to newsgroups or other online subscription services, and attachments to said communications, transactions and records.

b.  Communications, transactions and records to/from persons who may be co-conspirators of the Subject Offenses, or which may identify co-conspirators.

c.  Communications, transactions and records which may show motivation to commit the Subject Offenses.

d.  Communications, transactions and records that relate to the Subject Offenses.

e.  The terms "communications," "transactions", "records," "documents," "programs," or "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, pictures or videos), or electrical, electronic or magnetic form, as well as digital data files. These terms also include any applications (i.e. software programs). These terms expressly include, among other things, Emails, instant messages, chat logs, correspondence attached as to Emails (or drafts), calendar entries, buddy lists.

## ATTACHMENT "C"

## PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED PURSUANT TO THIS SEARCH WARRANT

1.     In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2.     When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3.     The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B, Section II. The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B, Section II. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law. To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4.     Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B, Section II as Information to be Seized, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

5.    The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a.    examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

b.    searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.    surveying various file directories and the individual files they contain;

d.    opening files in order to determine their contents;

e.    using hash values to narrow the scope of what may be found. Hash values are under- inclusive, but are still a helpful tool;

f.    scanning storage areas;

g.    performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A1 and A2; and/or

h.    performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B, Section II.

**Return and Review Procedures**

6.    Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

(e) Issuing the Warrant.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 14 days;

(B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.

(B) Inventory. An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

7.     Pursuant to this Rule, the government understands and will act in accordance with the following:

a.     Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of the warrant, an agent is required to file an inventory return with the Court, that is, to file an      itemized list of the property seized. Execution of the warrant begins when the United States  serves the warrant on the named custodian; execution is complete when the custodian provides all Search Warrant Data to the United States. Within fourteen (14) days of completion of the execution of the warrant, the inventory will be filed.

b.     Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which the      electronically stored information must be seized after the issuance of the warrant and copied after the execution of the warrant, not the "later review of the media or information" seized, or the later off-site digital copying of that media.

c.     Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the "physical storage media" into which the Search Warrant Data that was seized was placed, not an itemization of the information or data stored on the "physical storage media" into which the Search Warrant Data was placed;

d.      Under Rule 41(f)(1)(B), the government may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media on which the Search Warrant Data was placed plus a full image copy of the seized Search Warrant Data be retained by the government.

e.      If the person from whom any Search Warrant Data was seized requests the return of any information in the Search Warrant Data that is not set forth in Attachment B, Section II, that information will be copied onto appropriate media and returned to the person from whom the information was seized.



FILED

2017 OCT 13 PM 12: 36

U.S. MAGISTRATE JUDGE

BY_____

# SEALED

**Office of the United States Attorney**
District of Nevada
501 Las Vegas Boulevard, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

FILED

1    STEVEN W. MYHRE
     Acting United States Attorney
2    District of Nevada
     CRISTINA D. SILVA
3    PATRICK BURNS
     Assistant United States Attorneys
4    501 Las Vegas Blvd. South, Ste. 1100
     Las Vegas, Nevada 89101
5    Telephone: (702) 388-6336
     Fax (702) 388-6698
6    john.p.burns@usdoj.gov

7    Attorney for the United States of America

8

9                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
10                              -oOo-

11   IN THE MATTER OF THE SEARCH OF
     INFORMATION ASSOCIATED WITH:        Magistrate No.
12   EMAIL ACCOUNT
     CENTRALPARK1@LIVE.COM THAT IS            (Under Seal)
13   STORED AT A PREMISES CONTROLLED
     BY MICROSOFT. A1
14

15   IN THE MATTER OF THE SEARCH OF
     INFORMATION ASSOCIATED WITH:        Magistrate No.    2:17-mj-01010-NJK
16   EMAIL ACCOUNT
     MARILOUROSES@LIVE.COM THAT IS
17   STORED AT A PREMISES CONTROLLED         (Under Seal)
     BY MICROSOFT  A2
18

19

20

21               GOVERNMENT'S APPLICATION REQUESTING
                       SEALING OF AFFIDAVIT
22
            COMES NOW the United States of America, by and through STEVEN W.
23
     MYHRE, Acting United States Attorney, and PATRICK BURNS, Assistant United States
24
     Attorney, and respectfully moves this Honorable Court for an Order sealing the Affidavit,
25

26

2017 OCT 13  PM 12: 36

U.S. MAGISTRATE JUDGE

BY_____

together with the Court's Order, in the above-captioned matter until such time as this Honorable

Court, or another Court of competent jurisdiction, shall order otherwise.

The Government submits that it is necessary for said documents to be sealed in light of

the fact that they make reference to information regarding an on-going investigation.  The

Government submits that disclosure of the information might possibly jeopardize the

investigation.  The Government submits that its right to secrecy far outweighs the public's right

to know.

DATED this 12 day of October 2017.


Respectfully submitted,
STEVEN W. MYHRE
Acting United States Attorney


PATRICK BURNS
Assistant United States Attorney

FILED

2017 OCT 13  PM 12: 36

U.S. MAGISTRATE JUDGE

BY_____

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH: EMAIL ACCOUNT CENTRALPARK1@LIVE.COM THAT IS STORED AT A PREMISES CONTROLLED BY MICROSOFT. A1 | Magistrate No.<br><br>(Under Seal) |
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH: EMAIL ACCOUNT MARILOUROSES@LIVE.COM THAT IS STORED AT A PREMISES CONTROLLED BY MICROSOFT  A2 | Magistrate No.    2:17-mj-01010-NJK<br><br>(Under Seal) |

### SEALING ORDER

Based on the pending Application of the Government, and good cause appearing therefor,

IT IS HEREBY ORDERED that the Affidavit, together with the Court's Order, in the above-captioned matter shall be sealed until further Order of the Court.

DATED this 13th day of October, 2017.

UNITED STATES MAGISTRATE JUDGE



FILED

2017 OCT 13 PM 12: 36

U.S. MAGISTRATE JUDGE

BY_____

# SEALED

Office of the United States Attorney
District of Nevada
501 Las Vegas Boulevard, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

FILED

1

2

U.S. MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
-oOo-

2017 OCT 13  PM 12: 36

BY_____

3

4

5

6

7

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH EMAIL ACCOUNT
CENTRALPARK1@LIVE.COM THAT
IS STORED AT PREMISES
CONTROLLED BY MICROSOFT. A1

)
)
)
)
)
)
)
)
)
)

Mag. Case No: 2:17-mj-
ORDER COMMANDING
MICROSOFT CORPORATION NOT
TO NOTIFY ANY PERSON OF THE
EXISTENCE OF SEARCH WARRANT
**Under Seal**

8

9

10

11

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH EMAIL ACCOUNT
MARILOUROSES@LIVE.COM THAT
IS STORED AT PREMISES
CONTROLLED BY MICROSOFT. A2

)
)
)
)
)
)
)
)

Mag. Case No: 2:17-mj-01010-NJK
ORDER COMMANDING
MICROSOFT CORPORATION NOT
TO NOTIFY ANY PERSON OF THE
EXISTENCE OF SEARCH WARRANT
**Under Seal**

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Microsoft Corporation, located at 1355 Market Street, Suite 900, San Francisco, California 94103, an electronic communication service provider and/or a remote computing service, not to notify any person (including the subscribers and customers of the account(s) listed in the search warrant) of the existence of the attached search warrant until further order of the Court.

The Court determines that there is reason to believe that notification of the existence of the attached search warrant will seriously jeopardize the investigation or unduly delay a trial, including the following: giving the targets an opportunity to change patterns of behavior, change online personas, change or modify email addresses or other online user IDs, flee or continue flight from prosecution, destroy or tamper with evidence, intimidate potential witnesses, engage in additional extortion, or cause the release of the images that are the subject of the investigation

1

causing substantial personal and reputational harm to the victim. *See* 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Microsoft Corporation shall not disclose the existence of the attached search warrant, or this Order of the Court, to the listed subscriber or to any other person, unless and until otherwise authorized to do so by the Court, except that Microsoft Corporation may disclose the attached search warrant to an attorney for Microsoft Corporation for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

Oct. 13, 2017
Date

Honorable Nancy J. Koppe
United States Magistrate Judge



FILED

2017 OCT 13  PM 12: 36

U.S. MAGISTRATE JUDGE

BY:_____

# SEALED

**Office of the United States Attorney**
District of Nevada
501 Las Vegas Boulevard, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

1

2

FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
-oOo-

2017 OCT 13  PM 12:36

U.S. MAGISTRATE JUDGE

BY

3

4

5

6

7

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH EMAIL ACCOUNT
CENTRALPARK1@LIVE.COM THAT
IS STORED AT PREMISES
CONTROLLED BY MICROSOFT. A1

)
)
)
)
)
)
)
)
)

Mag. Case No: 2:17-mj-
ORDER COMMANDING
MICROSOFT CORPORATION NOT
TO NOTIFY ANY PERSON OF THE
EXISTENCE OF SEARCH WARRANT
**Under Seal**

8

9

10

11

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH EMAIL ACCOUNT
MARILOUROSES@LIVE.COM THAT
IS STORED AT PREMISES
CONTROLLED BY MICROSOFT. A2

)
)
)
)
)
)
)
)

2:17-mj-01010-NJK

Mag. Case No:
ORDER COMMANDING
MICROSOFT CORPORATION NOT
TO NOTIFY ANY PERSON OF THE
EXISTENCE OF SEARCH WARRANT
**Under Seal**

12

13

14

15

16

17

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Microsoft Corporation, located at 1355 Market Street, Suite 900, San Francisco, California 94103, an electronic communication service provider and/or a remote computing service, not to notify any person (including the subscribers and customers of the account(s) listed in the search warrant) of the existence of the attached search warrant until further order of the Court.

18

19

20

21

22

23

The Court determines that there is reason to believe that notification of the existence of the attached search warrant will seriously jeopardize the investigation or unduly delay a trial, including the following: giving the targets an opportunity to change patterns of behavior, change online personas, change or modify email addresses or other online user IDs, flee or continue flight from prosecution, destroy or tamper with evidence, intimidate potential witnesses, engage in additional extortion, or cause the release of the images that are the subject of the investigation

1

causing substantial personal and reputational harm to the victim. *See* 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Microsoft Corporation shall not disclose the existence of the attached search warrant, or this Order of the Court, to the listed subscriber or to any other person, unless and until otherwise authorized to do so by the Court, except that Microsoft Corporation may disclose the attached search warrant to an attorney for Microsoft Corporation for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

_____10/13/17_____

Date

NANCY J. KOPPE

_____

Honorable Nancy J. Koppe
United States Magistrate Judge

I hereby attest and certify on __10/13/17__
that the foregoing document is a full true and correct
copy of the original on file in my office, and in my legal
custody.

NANCY J. KOPPE
U.S. MAGISTRATE JUDGE
DISTRICT OF NEVADA

By_____          Deputy
                            Clerk

2

AO 93  (Rev. 11/13) Search and Seizure Warrant

F I L E D

# UNITED STATES DISTRICT COURT

### for the

### District of Nevada

2017 OCT 13  PM 12: 36

U.S. MAGISTRATE JUDGE

BY_____

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.    2:17-mj-01010-NJK |
| EMAIL ACCOUNT MARILOUROSES@LIVE.COM THAT | ) |
| IS STORED AT A PREMISES CONTROLLED BY | ) |
| MICROSOFT.   A2 | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the  _____ District of  _____   Nevada
*(identify the person or describe the property to be searched and give its location)*:

     SEE ATTACHMENT A2

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

     SEE ATTACHMENTS  B and C

     **YOU ARE COMMANDED** to execute this warrant on or before *October 27, 2017 (not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to  ~~Nancy J. Koppe~~ .
                                                                  *(United States Magistrate Judge)*

     ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
     ☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    10/13/2017   12:30 pm         _____
                                                                 *Judge's signature*

City and state:     Las Vegas, Nevada             Nancy J. Koppe   US Magistrate Judge
                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>    2:17-mj- | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|
|       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*



# SEALED

**Office of the United States Attorney**
District of Nevada
501 Las Vegas Boulevard, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## ATTACHMENT "A-2"

### ONLINE ACCOUNT TO BE SEARCHED

This warrant applies to information associated with the Microsoft email account marilouroses@live.com (the "Target Account 2") from inception to present, which is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, headquartered at 1 Microsoft Way, Redmond, Washington, 98052.

19

### ATTACHMENT "B"
### Particular Things to be Seized

I.    **Information to be disclosed by the Service Provider**

To the extent that the information described in Attachments A1 and A2 is within the possession, custody, or control of Microsoft, including any Emails, records, files, logs, or information that have been deleted but are still available to Service Provider, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Service Provider is required to disclose the following information to the government for each account or identifier listed in Attachments A-1 and A-2 from account inception to present:

a.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any OneDrive accounts associated with or assigned to Target Accounts 1 and 2.

b.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Office 360 accounts associated with or assigned to Target Accounts 1 and 2.

c.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Microsoft Family Safety accounts or services associated with or assigned to Target Accounts 1 and 2.

d.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Live Writer accounts or services associated with or assigned to Target Accounts 1 and 2.

e.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Live Mail accounts or services associated with or assigned to Target Accounts 1 and 2.

f.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Photo Gallery accounts or services associated with or assigned to Target Accounts 1 and 2.

g.    The contents of all communications, transactions, records, documents, programs, or materials stored in or associated with any Windows Live Messenger accounts or services associated with or assigned to Target Accounts 1 and 2.

## II.   **Information to be seized by the United States**

After reviewing all information described in Section I, the United States will seize evidence of violations of Title 18, United States Code Sections 32(a) (Destruction/Damage of Aircraft or Aircraft Facilities); 37(a)(2) (Violence at International Airport); and 922(a)(3); and 5 (Unlawful Interstate Transport/Delivery of Firearms by Non Federal Firearms Licensee); and 2 (Aiding and Abetting) (the "Subject Offenses") that occur in the form of the following, from account inception to present:

a.   Communications, transactions and records that may establish ownership and control (or the degree thereof) of the Target Account, including address books, contact or buddy lists, bills, invoices, receipts, registration records, bills, correspondence, notes, records, memoranda, telephone/address books, photographs, video recordings, audio recordings, lists of names, records of payment for access to newsgroups or other online subscription services, and attachments to said communications, transactions and records.

b.   Communications, transactions and records to/from persons who may be co-conspirators of the Subject Offenses, or which may identify co-conspirators.

c.   Communications, transactions and records which may show motivation to commit the Subject Offenses.

d.   Communications, transactions and records that relate to the Subject Offenses.

e.   The terms "communications," "transactions", "records," "documents," "programs," or "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, pictures or videos), or electrical, electronic or magnetic form, as well as digital data files. These terms also include any applications (i.e. software programs). These terms expressly include, among other things, Emails, instant messages, chat logs, correspondence attached as to Emails (or drafts), calendar entries, buddy lists.

**ATTACHMENT "C"**

**PROTOCOL FOR SEARCHING THE ELECTRONIC DATA SEIZED
PURSUANT TO THIS SEARCH WARRANT**

1.      In executing this warrant, the government must make reasonable efforts to use methods and procedures that will locate and expose in the electronic data produced in response to this search warrant ("the Search Warrant Data") those categories of data, files, documents, or other electronically stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

2.      When the Search Warrant Data is received, the government will make a duplicate copy of the Search Warrant Data ("the Search Warrant Data Copy"). The original version of the Search Warrant Data will be sealed and preserved for purposes of: later judicial review or order to return or dispose of the Search Warrant Data; production to the defense in any criminal case if authorized by statute, rule, or the Constitution; for purposes of showing the chain of custody of the Search Warrant Data and the Search Warrant Data Copy; or for any other lawful purpose. The original of the Search Warrant Data will not be searched or examined except to ensure that it has been fully and completely replicated in the Search Warrant Data Copy.

3.      The investigating agents will then search the entirety of the Search Warrant Data Copy using any and all methods and procedures deemed appropriate by the United States designed to identify the information listed as Information to be Seized in Attachment B, Section II. The United States may copy, extract or otherwise segregate information or data listed as Information to be Seized in Attachment B, Section II. Information or data so copied, extracted or otherwise segregated will no longer be subject to any handling restrictions that might be set out in this protocol beyond those required by binding law. To the extent evidence of crimes not within the scope of this warrant appear in plain view during this review, a supplemental or "piggyback" warrant will be applied for in order to further search that document, data, or other item.

4.      Once the Search Warrant Data Copy has been thoroughly and completely examined for any document, data, or other items identified in Attachment B, Section II as Information to be Seized, the Search Warrant Data Copy will be sealed and not subject to any further search or examination unless authorized by another search warrant or other appropriate court order. The Search Warrant Data Copy will be held and preserved for the same purposes identified above in Paragraph 2.

5. The search procedures utilized for this review are at the sole discretion of the investigating and prosecuting authorities, and may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a. examination of all of the data contained in the Search Warrant Data to view the data and determine whether that data falls within the items to be seized as set forth herein;

b. searching for and attempting to recover from the Search Warrant Data any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c. surveying various file directories and the individual files they contain;

d. opening files in order to determine their contents;

e. using hash values to narrow the scope of what may be found. Hash values are under- inclusive, but are still a helpful tool;

f. scanning storage areas;

g. performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A1 and A2; and/or

h. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B, Section II.

**Return and Review Procedures**

6. Rule 41 of the Federal Rules of Criminal Procedure provides, in relevant part:

(e) Issuing the Warrant.

(2) Contents of the Warrant.

(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:

23

(i) execute the warrant within a specified time no longer than 14 days;

(B) Warrant Seeking Electronically Stored Information. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

(f) Executing and Returning the Warrant.

(1) Warrant to Search for and Seize a Person or Property.

(B) Inventory. An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. . . . In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

7.    Pursuant to this Rule, the government understands and will act in accordance with the following:

a.    Pursuant to Rule 41(e)(2)(A)(iii), within fourteen (14) days of the execution of the warrant, an agent is required to file an inventory return with the Court, that is, to file an      itemized list of the property seized.  Execution of the warrant begins when the United States  serves the warrant on the named custodian; execution is complete when the custodian provides all Search Warrant Data to the United States. Within fourteen (14) days of completion of the execution of the warrant, the inventory will be filed.

b.    Pursuant to Rule 41(e)(2)(B), Rule 41(e)(2)(A) governs the time within which the      electronically stored information must be seized after the issuance of the warrant and copied after the execution of the warrant, not the "later review of the media or information" seized, or the later off-site digital copying of that media.

c.    Under Rule 41(f)(1)(B), the inventory return that is to be filed with the court may be limited to a description of the "physical storage media" into which the Search Warrant Data that was seized was placed, not an itemization of the information or data stored on the "physical storage media" into which the Search Warrant Data was placed;

d.      Under Rule 41(f)(1)(B), the government may retain a copy of that information for purposes of the investigation. The government proposes that the original storage media on which the Search Warrant Data was placed plus a full image copy of the seized Search Warrant Data be retained by the government.

e.      If the person from whom any Search Warrant Data was seized requests the return of any information in the Search Warrant Data that is not set forth in Attachment B, Section II, that information will be copied onto appropriate media and returned to the person from whom the information was seized.

25

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>2:17-mj- 01010 - NJK | Date and time warrant executed:<br>10/15/2017, 07:40AM | Copy of warrant and inventory left with:<br>MICROSOFT VIA FAX TO (425)708-0096 |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

THIS WARRANT WAS A SUPPLEMENTAL WARRANT FOR THE
CONTENTS OF A ONEDRIVE ACCOUNT AFTER THE SEARCH
WARRANT IN 2:17-mj-967-NJK. THE ONE DRIVE ACCOUNT
WAS PRODUCED AND REVIEWED ON 01/31/2018 AND WAS
FOUND TO HAVE NO CONTENTS. OTHER ITEMS PRODUCED
HAD PREVIOUSLY BEEN PRODUCED.

FILED

2018 FEB -2 PM 1:25

U.S. MAGISTRATE JUDGE

BY_____

| Certification |
|---|

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  02/02/2018

_T. Todd Tumbleson_
Executing officer's signature

T. TODD TUMBLESON
SA, FBI, LV, NV
Printed name and title